IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN A. MORTON,

        Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

        Defendant.

Civil Action No. 16-1090

AMBROSE, Senior District Judge

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 10 and 12]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting Defendant's Motion for Summary Judgment [ECF No. 11] and denying Plaintiff's Motion for Summary Judgment [ECF No. 9].

### I. BACKGROUND

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. On or about October 20, 2010, Plaintiff applied for DIB and SSI. [R. 87, 97,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

255-265]. In both applications, he alleged that since October 1, 2008, he had been disabled due to epilepsy, seizures, frequent migraines, inability to lift over 40 pounds, problems concentrating, short- to long-term memory loss, and trouble sleeping. Id. His last date insured is September 30, 2010. [R.14]. The state agency denied his claims initially, and he requested an administrative hearing. [R. 134-159]. Administrative Law Judge ("ALJ") Marty Pillion held a hearing on November 10, 2011. [R. 79-83]. At that hearing, Plaintiff was not represented by counsel, so the ALJ postponed the case to allow Plaintiff the opportunity to retain counsel. Id. ALJ Pillion held a second hearing on January 5, 2012, at which Plaintiff was represented by counsel. [R. 28-78]. Plaintiff appeared at the hearing and testified on his own behalf. Id. Plaintiff's girlfriend, Cindy George; Plaintiff's uncle, Donald Morton; and a vocational expert also were present at the hearing and testified. [R. 62-75]. In a decision dated March 28, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [R. 12-22]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on August 14, 2013, the Appeals Council denied Plaintiff's request for review. [R. 1-6].

Having exhausted all of his administrative remedies, Plaintiff filed an action in this Court on March 24, 2014. [R. 676-678]. On May 4, 2015, I issued an opinion and order granting Plaintiff's Motion for Summary Judgment and remanding the matter for consideration of Plaintiff's testimony and other record evidence regarding his lack of medical insurance as an explanation for his failure to pursue more regular and aggressive medical treatment, especially with regard to his headaches. [R. 679-691]. On June 24, 2015, the Appeals Council vacated the final decision of the Commissioner and remanded the matter to an ALJ for action consistent with my May 4, 2015 Order. [R. 692-695].

Administrative Law Judge ("ALJ") Michael S. Kaczmarek held a hearing on November 24, 2015, at which Plaintiff was represented by counsel. [R. 591-650]. Plaintiff appeared at the

hearing and testified on his own behalf. Id. Plaintiff's case manager, Samantha McClain, and a vocational expert also were present at the hearing and testified. [R. 635-647]. In a decision dated May 25, 2016, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [R. 569-582]. Plaintiff subsequently filed an action directly with this Court on July 25, 2016. [ECF No. 1].

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

**B. WHETHER THE ALJ IMPROPERLY EVALUATED THE OPINION OF PLAINTIFF'S TREATING PHYSICIAN ON REMAND**

In his prior action, Plaintiff argued that the ALJ erred in assigning "partial weight" to the opinions of his treating neurologist, Mihaela Mihaescu, M.D. Specifically, Plaintiff contended

4

that the ALJ failed to provide valid justification for his rejection of two particular limitations, *i.e.*, that Plaintiff would require unscheduled breaks and be absent from work more than four times a month due to severe intractable headaches. In that case, the record showed that Plaintiff saw Dr. Mihaescu off and on between April 2008 and May 2011 for his seizures and headaches. [R. 435-450, 510-516]. On January 9, 2012, Dr. Mihaescu completed a "Headaches Residual Functional Capacity Questionnaire" in which she opined, <u>inter alia</u>, that, due to his headaches, Plaintiff would need to take unscheduled breaks during the workday and that he would likely miss more than four days of work per month. [R. 559-565].[2]

Although the ALJ agreed that Dr. Mihaescu was a treating source, he gave her January 9, 2012 opinion only partial weight. In particular, he did not credit Dr. Mihaescu's opinion that Plaintiff would need extra breaks and would be absent from work more than four times a month because Dr. Mihaescu had "opined within the same document that the claimant was capable of low-stress jobs, and her previous notes did not contain any reference to severe and debilitating symptoms." [R. 19]. The ALJ also noted that the evidence showed Plaintiff did not experience seizures while on medication and experienced no side effects. <u>Id.</u> at 19-20.

In my May 4, 2015 Opinion, I ordered remand on this issue, noting (1) that the ALJ's reference to Plaintiff's seizures was not pertinent to whether Plaintiff's *headaches* would affect his ability to attend work on a regular basis, and (2) that the ALJ erred in failing to discuss the effect of Plaintiff's inability to afford medical insurance on his course of treatment for headaches. In this regard, I instructed as follows:

> [O]n remand, the ALJ must evaluate Dr. Mihaescu's opinion in the context of the question she was asked to answer – *i.e.*, the effects of Plaintiff's <u>headaches</u> on his ability to work. With respect to the remaining reasons given, the ALJ would be entitled to afford less than great weight to a treating physician's opinion for these

---

[2] The vocational expert testified that an individual who would be absent more than two days of work a month and/or would be off-task more than ten percent of an eight-hour workday would be precluded from any competitive work. [R. 74-75].

> reasons if supported by record evidence. In this case, however, the ALJ's analysis of Dr. Mihaescu's records is colored by his opinion that those records reflect a course of non-compliance and/or conservative treatment inconsistent with disabling pain. [R. 17-20]. As set forth above, the ALJ erred in failing to discuss the effect of Plaintiff's inability to afford medical insurance on his course of treatment. Because Plaintiff's health insurance argument relates directly to his treatment for headaches, the ALJ must re-evaluate Dr. Mihaescu's opinions on remand and explain what, if any, impact Plaintiff's lack of health insurance has on his conclusions. In so doing, the ALJ also should fully explain any credibility findings as to Plaintiff's testimony and other record evidence regarding the frequency and severity of his headaches and the resultant effect, if any, on his ability to work on a regular and continuing basis.

[R. 690].

As previously set forth, the new ALJ on remand again concluded that Plaintiff had the residual functional capacity to perform light work with limitations, and that jobs existed in significant numbers in the national economy that Plaintiff could perform. Plaintiff appealed this second finding of non-disability directly to this Court. In his Brief, Plaintiff argues that the ALJ failed to properly re-evaluate Dr. Mihaescu's opinion on Plaintiff's migraine headaches despite my May 4, 2015 Order. [ECF No. 10, at 18-21]. After careful consideration, I disagree.

Essentially, Plaintiff contends that the ALJ on remand cited the same reasons I previously rejected in support of his decision not to give Dr. Mihaescu's opinion regarding his headaches great or controlling weight. This argument is unpersuasive. Although Plaintiff is correct that the ALJ repeats in his headache analysis that Plaintiff's seizures were controlled with medication, the ALJ expands his discussion to include Plaintiff's headache medications as well. For example, the ALJ cites Dr. Mihaescu's treatment notes stating that Plaintiff reported that the migraine medication Imitrex was effective for his headaches and that his only complaint was that his insurance only provided nine pills per month. See R. 578 (citing Exs. 8F and 15F); see also R. 576 ("[N]otes from claimant's treating neurologists showed that headache and seizure medications were effective."). Similarly, although both ALJ decisions cite as support Dr.

Mihaescu's opinion in the headache questionnaire that Plaintiff was capable of low-stress jobs, the ALJ in the post-remand opinion expands upon this explanation, noting that Plaintiff's mental health records both prior and subsequent to Dr. Mihaescu's 2011 evaluation show that Plaintiff could meet the mental demands of a job within the formulated RFC. [R. 578].[3]

Moreover, unlike the first opinion which mentions headaches only briefly and primarily in passing, the ALJ in the current opinion spent almost a page and a half discussing Plaintiff's headaches and related symptoms. In that discussion, the ALJ accepted that Plaintiff suffers migraines that can be "quite painful and limiting," but cited substantial record evidence showing that Plaintiff's symptoms were not as limiting as alleged. Among other things, the ALJ noted: that standard treatment of the headaches was effective; that Plaintiff never sought regular treatment aimed at the diagnosis and remedy of his headache symptoms; and that Plaintiff was able to perform substantial gainful activity for several years prior to the onset of his seizures despite testifying that he had suffered from headaches all of his life. [R. 578]. The ALJ pointed out that there was no evidence showing that Plaintiff's headaches became more severe after the alleged disability onset date than before and concluded that he could not, therefore, give great weight to any medical opinion that Plaintiff's headaches caused marked functional impairment apart from his other medically determinable impairments. Id. The ALJ noted Plaintiff's testimony that he sought to self-medicate through illicitly obtained Vicodin and Oxy-Contin, but concluded that the testimony did not establish that his symptoms were too severe to allow him to work because he turned to those drugs only after choosing not to seek or follow up on appropriate medical treatment. Id. The ALJ similarly cited Plaintiff's testimony that he gave up trying to find

---

[3] Plaintiff also complains that the ALJ declined to give Dr. Mihaescu's opinion great or controlling weight because she last treated Plaintiff in May 2011, over four years prior to the second hearing. [R. 578]. This argument is without merit. The months-long gap between Dr. Mihaescu's last treatment of Plaintiff and the date of the headache questionnaire itself is relevant. In addition, the ALJ also cited medical records and testimony regarding Plaintiff's medical history and other events subsequent to Dr. Mihaescu's treatment that support his conclusion that Plaintiff's headaches were not as limiting as Dr. Mihaescu opined.

7

a doctor in 2014 when it seemed difficult to obtain a referral as further evidence that Plaintiff's headaches were not as limiting or bothersome as alleged. Id. at 578-579. Recognizing that Plaintiff's headaches necessitated some restrictions, the ALJ expressly included specific limitations in the RFC to shield Plaintiff from environmental factors known to trigger or exacerbate migraine headaches such as bright lights and excessive noise. Id. at 574, 578. The RFC also clarified, inter alia, that all work must be done in a static, low-stress environment, involving only simple decisions and infrequent change. Id. at 574.

In addition to this substantial evidence, the ALJ separately discussed Plaintiff's lack of medical insurance and its effect on his course of treatment for headaches. Id. at 580. In so doing, the ALJ declined to credit fully Plaintiff's allegation that he would have used prescribed medication as directed if he had been able to afford it. In support of this finding, the ALJ noted, inter alia, that although Plaintiff said he could not afford medication not covered by a health insurance plan, the record showed that he was able to purchase Vicodin on the street to self-medicate for a headache and that he used marijuana occasionally. Id. (citing Ex. 26F). The ALJ also cited the lack of record evidence that Plaintiff or his case manager ever pursued the possibility of receiving medication at a reduced cost or that Plaintiff sought or received treatment at clinics or other establishments providing medical care to indigent patients. Id. The ALJ reasoned that Plaintiff's failure even to attempt to explore such avenues casts some doubt on the severity of the symptoms themselves. See, e.g., Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (credibility determination upheld where plaintiff claimed he could not afford prescription pain medication, but there was no evidence to suggest that he sought any treatment offered to indigents or chose to forgo smoking cigarettes to help finance the medication).

Social Security Ruling 96–7 states that "[t]he adjudicator must not draw any inferences about an individual's symptoms and their functional effect from a failure to seek or pursue regular

8

medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7. In accordance with my prior order, the ALJ on remand expressly considered Plaintiff's alleged inability to afford medical insurance and its effect on his conclusions regarding Plaintiff's headache pain and related treatment. Thus, unlike the initial appeal, I am able to determine that the ALJ considered Plaintiff's lack of insurance argument and did not merely ignore it.

In my original opinion, I also explained that, on remand, the ALJ was "not required to credit Plaintiff's testimony and, if supported by specific, legitimate reasons, he may still be able to conclude that Plaintiff's course of treatment undermines his credibility or that other grounds such as Plaintiff's activities of daily living are inconsistent with disabling pain." [R. 687]. It is well-established that the ALJ is charged with the responsibility of determining a claimant's credibility and that the ALJ's credibility determination ordinarily is entitled to great deference. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003). As set forth in detail above, substantial evidence supports the ALJ's conclusion that Plaintiff's complaints of disabling headache (and other) pain are not fully credible. Thus, remand is not warranted on this basis. See R. 574-580 (citing Exs. 8F, 15F, 18F, 19F, 26F, and Testimony).

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUSTIN A. MORTON, )
 )
    Plaintiff, )
 )
vs. ) Civil Action No. 16-1090
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
 )
    Defendant. )
 )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 3rd day of May, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED.

                                BY THE COURT:

                                <u>/s/ Donetta W. Ambrose</u>
                                Donetta W. Ambrose
                                U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).